UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

JANET LOWRY,

                Plaintiff,

                V.

ANYWHERE REAL ESTATE, INC.,

                and

ANYWHERE ADVISORS LLC,

                and

NRT NEW YORK LLC d/b/a
THE CORCORAN GROUP,

                and

MICHAEL SORRENTINO,

                Defendants.

---------------------------------------------------------------X

Civil Action No.: 23-cv-10620

**COMPLAINT**

Jury Trial Demanded

Plaintiff, by her attorneys, Stulberg & Walsh, LLP, complaining of Defendants, alleges:

**PRELIMINARY STATEMENT**

1.      This action is brought against (a) Anywhere Real Estate, Inc., f/k/a National

Realty Trust and Realogy (hereinafter "Anywhere Real Estate"); (b) Anywhere Advisors LLC,

f/k/a Realogy Brokerage Group (hereinafter "Anywhere Advisors"); (c) NRT New York LLC,

d/b/a The Corcoran Group (hereinafter "Corcoran"); and (d) Michael Sorrentino (hereinafter

"Sorrentino") (collectively, "Defendants").

2.      Janet Lowry (hereinafter, "Plaintiff") brings this action to remedy discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq., and to remedy retaliation in violation of the ADEA, 29 U.S.C. § 626(d), the NYSHRL, N.Y. Exec. L. § 296(1)(e), and the NYCHRL, N.Y.C. Admin. Code § 8-107(7).  Plaintiff seeks injunctive and declaratory relief, monetary damages, and all other appropriate legal and equitable relief, pursuant to 28 U.S.C. § 2201, 29 U.S.C. § 626(b), N.Y. Exec. L. § 297(4)(c) and (9), N.Y.C. Admin. Code 8-101 and 8-502, et seq., and all other applicable federal, state and local laws.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court over Plaintiff's ADEA claims is invoked pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. §§ 1331 and 1343(a)(4).

4.      Jurisdiction of this Court over Plaintiff's NYSHRL and NYCHRL claims is invoked pursuant to 28 U.S.C. § 1367(a), in that those claims are so related to Plaintiff's ADEA claims as to form the same case or controversy under Article III of the United States Constitution.

5.      Jurisdiction of this Court over Plaintiff's NYSHRL and NYCHRL claims is also invoked pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity between the states of Plaintiff's citizenship and of Defendants' citizenships and the amount in controversy is over $75,000.

6.      Venue is proper within this District, pursuant to 28 U.S.C. § 1391(b), in that Defendant Corcoran resides and can be found in this District; Defendant Anywhere Advisors

operates a network of real estate offices, including but not limited to, The Corcoran Group, Sotheby's International Realty and Coldwell Banker, in New York City and elsewhere in this District; Defendant Anywhere Real Estate wholly owns, controls, manages and operates Anywhere Advisors; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7.    Plaintiff is a United States citizen.  Her date of birth is August 13, 1954. She is 69 years old.

8.    Plaintiff resides in Litchfield County, Connecticut, and intends to reside there indefinitely. Plaintiff is a citizen and domiciliary of Connecticut, holding a Connecticut driver's license, being registered to vote in Connecticut, and maintaining a Connecticut registration of her vehicle.

9.    At all pertinent times herein until the involuntary termination of her employment, on August 23, 2022, Plaintiff was employed as a Senior Managing Director at the New York City, NY Upper West Side office (known as "Gallery") of Corcoran, Anywhere Advisors, and Anywhere Real Estate (collectively, "Corporate Defendants").  In that capacity, Plaintiff was responsible for Gallery's management and agent recruitment, development and retention.  At all pertinent times herein, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 630(f).

10.   Corcoran is a New York company that is wholly owned by Anywhere Advisors, and an identity of interest exists between Corcoran, Anywhere Real Estate and Anywhere Advisors.

11.     Upon information and belief, Corcoran maintains its headquarters at 590 Madison Avenue, New York, NY 10022 and is an "employer" within the meaning of 29 U.S.C. §§ 630(b) and 1002(5), and N.Y. Exec. L. § 292(5), and N.Y.C. Admin. Code § 8-102.

12.     Upon information and belief, Corcoran's website features a senior leadership team of twenty-one persons, which signifies that Corcoran has at least twenty employees.

13.     Upon information and belief, Corcoran operates as an interstate commercial entity that annually moves hundreds of millions of dollars in sales between its New York City, Long Island, and Florida offices.

14.     In particular, upon information and belief, Corcoran's robust relocation referral system recompenses Corcoran agents who make successful out-of-state referrals and/or assist families relocating to New York State with a significant percentage of the commissions on sales in the tens of millions of dollar range if not more.

15.     Upon information and belief, at all pertinent times herein, Corcoran has done business as itself.

16.     Upon information and belief, Anywhere Real Estate is a Delaware corporation and an "employer" within the meaning of 29 U.S.C. §§ 630(b) and 1002(5), and N.Y. Exec. L. § 292(5), and N.Y.C. Admin. Code § 8-102.

17.     Upon information and belief, Anywhere Real Estate employs approximately 9665 persons, and, via its wholly owned subsidiary Anywhere Advisors, operates more than thirty offices in New York under the Corcoran, Sotheby International Real Estate and Coldwell Banker brands. Upon information and belief, Anywhere Real Estate generated approximately $6.9 billion in net revenue in 2022.

4

18.     Upon information and belief, at all pertinent times herein, Anywhere Real Estate has done business as itself, as "National Realty Trust," and as "Realogy."

19.     Upon information and belief, Anywhere Real Estate wholly owns Anywhere Advisors through a series of wholly owned nested corporate entities, and an identity of interest exists between Anywhere Real Estate and Anywhere Advisors.

20.     Upon information and belief, Anywhere Advisors owns and operates residential real estate brokerages. Anywhere Real Estate holds Anywhere Advisors out as "one of the nation's largest owners and operators of residential real estate brokerages".

21.     Upon information and belief, Anywhere Advisors is one of Anywhere Real Estate's own brands and services. Anywhere Real Estate holds Anywhere Advisors out as one of its own brands and services and describes Anywhere Advisors as one of its business units.

22.     Anywhere Real Estate regularly trumpets its ownership of the Corcoran brand in promotional materials, investor reports and government filings.

23.     Upon information and belief, Anywhere Advisors owns and operates approximately 675 brokerage offices that generated over $246 billion in U.S. sales volume in 2021. One of these offices employed Plaintiff.

24.     Upon information and belief, Anywhere Advisors operates many, if not most, of its 675 brokerage offices through instrumentalities such as Corcoran.

25.     Upon information and belief, Anywhere Real Estate handles Anywhere Advisors' corporate management functions, including human resources. Upon information and belief, Anywhere Real Estate and Anywhere Advisors share management staff, and Anywhere Real Estate may execute personnel decisions at Anywhere Advisors.

26.     Upon information and belief, Anywhere Advisors is an "employer" within the meaning of 29 U.S.C. §§ 630(b) and 1002(5), and N.Y. Exec. L. § 292(5), and N.Y.C. Admin. Code § 8-102.

27.     Upon information and belief, Anywhere Advisors is a Delaware Corporation authorized to conduct business in New York, and an identity of interest exists between Anywhere Advisors and Anywhere Real Estate. Both Anywhere Advisors and Anywhere Real Estate have a principal place of business at 175 Park Avenue, Madison, NJ 07940. In multiple government filings, Corcoran also claims 175 Park Avenue, Madison, NJ 07940 as its principal office location.

28.     Upon information and belief, Corcoran is a citizen of Delaware because it is a Delaware Limited Liability Company whose sole sub-member, Anywhere Real Estate is incorporated in Delaware; or, in the alternative, it is a citizen of New York because it is headquartered in New York.

29.     Upon information and belief, Anywhere Advisors is a citizen of Delaware because it is a Delaware Limited Liability Company whose sole sub-member, Anywhere Real Estate is incorporated in Delaware; or, in the alternative, it is a citizen of New Jersey because it is headquartered in New Jersey.

30.     Upon information and belief, Anywhere Real Estate is a citizen of Delaware because it is a Delaware corporation and of New Jersey because it maintains its headquarters in Madison, New Jersey.

31.     Defendant Michael Sorrentino, at all pertinent times, served the Corporate Defendants as Corcoran's Senior Vice President and General Sales Manager, and had supervisory control over Plaintiff. Defendant Sorrentino primarily worked out of Corcoran's 590

Madison Avenue headquarters, from which he exercised management authority over Plaintiff and other Senior Managing Directors, up to and including the authority to criticize their work, place them on performance improvement plans, and terminate their employment. Upon information and belief, Defendant Sorentino is in his mid-40's, substantially younger than Plaintiff.

32.     Upon information and belief, Defendant Sorrentino is a citizen and domiciliary of New York who, according to his online Corcoran biography, lives in Manhattan and spends his weekends on Long Island.

33.     In addition to being strictly liable for the unlawful discriminatory and retaliatory conduct of Defendant Sorrentino, the Corporate Defendants are also strictly liable for the conduct of Gary Malin, who at all pertinent times was employed by Corcoran, Anywhere Real Estate and Anywhere Advisors as Corcoran's Chief Operating Officer, and had supervisory control over, and managed, Plaintiff.

## STATEMENT OF FACTS

34.     At all pertinent times herein, Plaintiff's performance at the Corporate Defendants was excellent and outstanding.

35.     Plaintiff worked at Corcoran for 28 years, from 1994 until the involuntary termination of her employment in 2022. For 26 of those years, Plaintiff managed Corcoran's Gallery, building it up from a poorly-managed, underperforming unit into Corcoran's flagship New York City office. Throughout her tenure, Gallery consistently rated among the highest performing of the 800-office network of National Realty Trust, a predecessor of Anywhere Real Estate.

36.     National Realty Trust's executive team repeatedly recognized and honored Plaintiff personally for her leadership capabilities and exceptional business success at Gallery.

37.     The Corporate Defendants jointly managed Plaintiff's work, and Tanya Reu-Narvaez, Executive Vice President and Chief People Officer for Anywhere Real Estate (then Realogy) signed an employment agreement with Plaintiff in 2021.

38.     As Senior Managing Director at Gallery, Plaintiff consistently exceeded the business goals set for her and generated increasing volumes of sales through sophisticated agent recruitment, training and management.

39.     Indeed, during the depths of the pandemic, Plaintiff recruited 52 agents in 2020 and 2021.

40.     Defendant Sorrentino recognized Plaintiff's recruiting success when he informed her in or around November of 2021 that Corcoran's normal Senior Managing Director agent recruiting quota did not apply to her.

41.     In addition to managing Gallery, Plaintiff was a team player who assisted her colleagues at Corcoran. For example, she covered for Corcoran's West Side Office when fellow Senior Managing Director Joel Dommel was away on vacation or out sick.

42.     As detailed in paragraphs 44 through 82 herein, despite Plaintiff's excellent job performance and business success, Defendants subjected Plaintiff, between May 16, 2022 and August 23, 2022, to derogatory, age-related comments by senior executives, placed her on an unwarranted, pretextual and discriminatory performance improvement plan because of her age, retaliated against her when she complained about discriminatory treatment to Corporate Defendants' Human Resources office, abruptly fired her because of her age just ten days

following her 68th birthday and thirteen weeks following her most recent complaint, and replaced her with a substantially younger, wholly unqualified successor.

43.     Defendants' intentional discriminatory and retaliatory treatment of Plaintiff is evidenced by, among other things, the acts referenced in paragraphs 44 through 82 herein.

44.     In September 2021, when Plaintiff was 67 years old, she mentioned to Defendant Sorrentino that she was considering retirement within the next several years.  Several days later, Defendant Sorrentino asked Plaintiff: "Are you checked out?" Upon information and belief, Defendant Sorrentino's question reflected his belief that Plaintiff, due to her age, was no longer suitable to serve as Senior Managing Director of the Gallery office.

45.     On or about May 16, 2022, Plaintiff again told Defendant Sorrentino that she was considering retirement.  He once again asked Plaintiff if she was "checked out" and promptly issued Plaintiff an unfounded performance improvement plan, called an "Accountability Action Plan for Performance" ("the May 16 AAP").

46.     The May 16 AAP contained numerous egregious falsehoods, mischaracterizations and irrelevancies concerning Plaintiff's performance.

47.     The scope and degree of the falsehoods, mischaracterizations and irrelevancies in the May 16 AAP demonstrate that it was intended to serve as a pretext for Plaintiff's subsequent termination.

48.     The May 16 AAP falsely alleged that Gallery had experienced "a sharp decline in Closed Gross Profit" under Plaintiff's management: an allegation that was so manifestly untrue that Defendants removed it in a subsequent version of the AAP.

49.     The May 16 AAP falsely alleged irregularities in Plaintiff's vacation usage, even though Plaintiff had not taken a single vacation day from January 2020 until October 2021: a year-and-a-half-long period.

50.     The May 16 AAP falsely claimed that Plaintiff took vacation from December 22, 2021 through January 5, 2022 when, in fact, Plaintiff had worked throughout that period, and had even provided cover for another office during that period.

51.     The May 16 AAP falsely claimed that Gallery had $0 in "waterfall production" (i.e., sales revenue from newly recruited agents) in calendar year 2022.  The accurate figure for Gallery's waterfall production in calendar year 2022 was $3,893.  When Plaintiff showed Defendant Sorrentino that this accusation was wrong, he admitted his error, but immediately alleged other unfounded shortcomings in Plaintiff's performance. Upon information and belief, Defendant Sorrentino did not subject younger Senior Managing Directors to unfounded performance accusations of the type he levelled at Plaintiff.

52.     Plaintiff was shocked by the sudden barrage of unwarranted criticism by Defendant Sorrentino and, realizing that she had been a victim of age discrimination, complained about it on or about May 23, 2022, by email to Tanya Reu-Narvaez, Anywhere Real Estate / Realogy Executive Vice President and Chief People Officer.  Later that day, Defendant Sorrentino responded to Plaintiff's message in an email to Ms. Reu-Narvaez, accusing Plaintiff of being "combative". Defendant Sorrentino's accusation reflected his animus toward Plaintiff for having complained of age discrimination.

53.     In a meeting on June 3, 2022 with Defendant Sorrentino and Jennifer Kaplow, Corcoran Regional Director of Human Resources, Ms. Kaplow belittled Plaintiff's May 23, 2022 complaint, sarcastically asking Plaintiff, "Do you still feel you're a victim?"

54.     At the same June 3, 2022 meeting, Defendant Sorrentino and Ms. Kaplow issued Plaintiff a new Accountability Action Plan ("the June 3 AAP"). The June 3 AAP abandoned the May 16 AAP's falsehoods regarding waterfall production and vacation use, but continued to misstate Gallery's performance under Plaintiff's management.

55.     The June 3 AAP criticized Plaintiff's agent development and recruitment skills on the ground that four agents had left Gallery in 2022, without acknowledging that Plaintiff had recruited nine new agents thus far in 2022 and that other Corcoran offices, managed by younger Senior Managing Directors, had lost many more agents than Gallery had. (For example, one Manhattan office, alone, had lost 18 agents.)

56.     The June 3 AAP also failed to mention that Plaintiff had recruited 52 new agents to Gallery between 2020 and 2021.

57.     The June 3 AAP also failed to mention that, in light of Plaintiff's unparalleled recruitment successes, Defendant Sorrentino had told Plaintiff in 2021 that Corcoran's agent recruiting quota did not apply to her.

58.     The June 3 AAP also suggested, without basis, that Plaintiff was not responding promptly to the questions and concerns of her agents or doing enough to ensure a satisfactory "agent experience".

59.     The June 3 AAP criticized Gallery's sales volume in the first five months of 2022, even though Robert Hyde, Corcoran's Director of Finance, consistently told Plaintiff during the summer of 2022 that Gallery's sales volume numbers were in line with those of Corcoran's other offices and did not present any concerns.

60.     Upon information and belief, Gallery performed comparably to other Corcoran offices in or around the first quarter of 2022. Yet, upon information and belief, no other Senior

11

Managing Director was placed on a performance plan in or around the time Plaintiff was placed
on a performance plan, or in or around the time Plaintiff's employment was terminated.

61.     Throughout the summer of 2022, Plaintiff worked diligently to comply with what
had been asked of her in the June 3 AAP.  Plaintiff collaborated with Amanda Caggiano,
Corcoran's Director of Agent Experience, to further expand agent recruitment.  On July 13,
2022, Ms. Caggiano texted Plaintiff:— "You're a rockstar!  Great job with Grace [a high-value
recruit who had resisted other managers' overtures to join Corcoran]".  Ms. Caggiano added:—
"I wanted to give you a shout out with Mike [Sorrentino], you really did such a good job staying
on her."

62.     On July 21, 2022, Plaintiff led a seminar entitled "Tips from a Top SMD [Senior
Managing Director]" at the invitation of Seth Hirschhorn, Corcoran's Vice President for
Learning and Development, who praised Plaintiff's leadership and presentation. At that seminar,
Mr. Hirschhorn praised Gallery as one of the most successful, profitable and well-run Corcoran
offices.

63.     Nonetheless, Defendant Sorrentino, together with his close associate, Corcoran's
Chief Operating Officer Gary Malin, continued to target Plaintiff. On June 21, 2022, Mr. Malin
sent Plaintiff an email accusing her of not prioritizing having her agents timely complete
harassment prevention training. Plaintiff responded later the same day that all of her agents had
completed the training except one, who had only recently joined Gallery. Upon information and
belief, Mr. Malin is 55 years old, significantly younger than Plaintiff.

64.     After the May 16 AAP was issued, six additional agents joined Gallery thanks to
Plaintiff's successful recruiting efforts, while only one agent left the office.

65.     Defendants terminated Plaintiff's employment on August 23, 2022.  On that date,
Defendant Sorrentino summoned Plaintiff to a meeting at Corcoran's 590 Madison Avenue

headquarters. In addition to Mr. Sorrentino, that meeting was attended by Ryan Fitzpatrick, Corcoran's Regional Vice President for Downtown Manhattan.

66.    At the August 23, 2022 meeting, Defendant Sorrentino claimed that everyone on an AAP was being terminated. Upon information and belief, this statement was false, as no other Corcoran employees were terminated in or around the time Plaintiff was terminated.

67.    At the August 23, 2022 meeting, Plaintiff asked, in words or effect, "Can you tell me whether any other SMD has hired as many people as I have done in recent months?" Defendant Sorrentino responded that he could not discuss that and that the termination decision was not changing.

68.    At the August 23, 2022 meeting, Defendant Sorrentino also asked Plaintiff to announce at a company meeting that she was choosing to retire. When Plaintiff refused to lie for Mr. Sorrentino's benefit, he made her termination effective immediately and had Plaintiff escorted out of the building.

69.    Following Plaintiff's termination, Defendant Sorrentino appointed Kimberly Pickard to replace Plaintiff in the Senior Managing Director role at Gallery.

70.    Upon information and belief, Ms. Pickard is 41 years old (27 years younger than Plaintiff) and, prior to her selection as Plaintiff's replacement, had no prior real estate sales or brokerage management experience.

71.    Upon information and belief, Ms. Pickard joined Citi Habitats, a Corcoran acquisition, in 2007.  Upon information and belief, Citi Habitats only handled rentals.  Upon information and belief, Ms. Pickard served as Defendant Sorrentino's assistant at Citi Habitat's 1st Avenue and 76th Street office until that office closed.  Upon information and belief, Ms.

Pickard was then transferred to the Citi Habitat 387 Park Avenue South office, where she processed rental deal paperwork.

72.     At or around 6:00 p.m. on August 23, 2022, the same day as Plaintiff's termination, Corcoran Chief Executive Officer Pamela Liebman called Plaintiff. Ms. Liebman expressed dismay at the decision made by Defendant Sorrentino to replace Plaintiff with Ms. Pickard, and stated, "I'm going to have to do damage control." Upon information and belief, Ms. Liebman made this statement because she knew how manifestly unqualified Ms. Pickard was to step into the Senior Managing Director role at Gallery.

73.     Upon information and belief, Defendants have not provided Gallery's agents with any reason for Plaintiff's departure.

74.     Upon information and belief, in September 2022, shortly after her appointment to the Senior Managing Director role at Gallery, Ms. Pickard confided to a co-worker that she did not know how to run a meeting and asked that co-worker to run meetings for her.

75.     On August 24, 2022, Corcoran founder Barbara Corcoran sent Plaintiff flowers with the message, "Janet, Thank you for coming our way and becoming the adored leader and inspiration for so many good people. I never worried a moment with them in your capable hands…". Plaintiff also received the following message from Gallery agent Greg Hudson: "Hi Janet – The office just informed us that you decided to move on. Which office did you switch to? If there is an opportunity there – I will switch my license today to continue to work with you! You have been enthusiastic and encouraging in a way no other broker has!". Plaintiff also received the following sequence of messages from Gallery agent Yiwen Wu: "Hi Janet, I didn't expect the news this morning. I hope everything is ok with you!" ; "You'll be missed!!!"; "I want to say thank you for all your help since I joined Corcoran this April. It's not been long but I think

you are an amazing manager!" Maura Jarach, an agent whom Plaintiff recruited to Corcoran from another firm, and who was one of Gallery's top producers, sent Plaintiff a message stating, "I really miss you as my manager. You are the best one I ever had Janet. You're a class act and it is missed."

76.     Plaintiff received additional positive feedback and support from many Gallery agents following her termination, further underscoring the inaccuracy of the June 3 AAP critique of her agent relationship skills. Gallery agents, on their own initiative, organized a sendoff for Plaintiff on September 19, 2022—an outpouring of gratitude for Plaintiff's mentorship in direct contrast to the June 3 AAP's contention that Plaintiff was not sufficiently attentive to her agents' experience.

77.     Upon information and belief, Defendant Corcoran sought to portray this agent-initiated sendoff as a company event by promoting it in an email to Gallery agents and by announcing it at an agent meeting.

78.     Upon information and belief, multiple agents have left Gallery since Ms. Pickard's appointment as Senior Managing Director there—an ironic development, given that Plaintiff's performance plan flagged agent retention as a corporate priority.

79.     In sum, after Plaintiff, at age 67, told her supervisor that she was considering retiring in the next several years, Defendants twice asked her if she was "checked out," and targeted her by implementing a false and pretextual AAP; retaliating against her by escalating the AAP's demands when she complained to HR about age discrimination; and terminating her employment without justification and filling her position—which she had successfully performed for 26 years—with a much younger and wholly unqualified employee.

80.     Upon information and belief, between 2017 and 2023, Corporate Defendants have evinced a pattern and practice of terminating older Corcoran managers and replacing them with substantially younger persons.

81.     On March 16, 2023, plaintiff timely filed a Charge of Discrimination against Corcoran and Anywhere Real Estate with the United States Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination on the basis of age and the acts of retaliation alleged herein.  Corcoran and Anywhere Real Estate responded to Plaintiff's Charge of Discrimination on September 20, 2023. On September 27, 2023, the EEOC issued a Notice of Right to Sue to Plaintiff notifying her of her 90-day window to bring this action (i.e., by December 26, 2023), and closing the EEOC charge without further investigation or attempts at conciliation.

82.     Accordingly, Plaintiff has complied with all administrative requirements of the ADEA and brings this action within the requisite time frame.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (As Against the Corporate Defendants)
#### Age Discrimination in Violation of the ADEA

83.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 82 of this Complaint as though recited in full herein.

84.     Upon information and belief, Corporate Defendants took the adverse actions described in paragraphs 1 through 82 of this Complaint because of Plaintiff's age.

85.     Upon information and belief, Corporate Defendants, by the actions described in paragraphs 1 through 82 of the Complaint, have unlawfully discriminated against Plaintiff on the basis of age in violation of 29 U.S.C. § 623.

86.     Upon information and belief, Corporate Defendants' violations of the ADEA described in paragraphs 1 through 82 of this Complaint were willful, within the meaning of 29 U.S.C. § 626(b).

87.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Corporate Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

88.     No previous application has been made for the relief requested herein.

### AS AND FOR A SECOND CAUSE OF ACTION
### (As Against all Defendants)
### Age Discrimination in Violation of the NYSHRL

89.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 82 of this Complaint as if recited in full herein.

90.     Upon information and belief, the decision to terminate Plaintiff's employment was made, reviewed and/or approved, and executed in the State of New York.

91.     Upon information and belief, Defendants took the adverse actions described in paragraphs 1 through 82 of this Complaint because of Plaintiff's age.

92.     Defendants, by the discriminatory acts alleged in paragraphs 1 through 82, have violated the NYSHRL, N.Y. Exec. L. § 296(1)(a).

93.     Defendant Sorrentino was a supervisory employee of Corcoran who participated in the unlawful discriminatory actions referenced in paragraphs 1 through 82 and, therefore, is individually liable for the unlawful discrimination complained of herein.

94.     Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

95.     No previous application has been made for the relief requested herein.

**AS AND FOR A THIRD CAUSE OF ACTION (As Against all Defendants)**
**Age Discrimination in Violation of the NYCHRL**

96.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 82 herein as though recited in full herein.

97.     Upon information and belief, the decision to terminate Plaintiff's employment was made, reviewed and/or approved, and executed in New York, New York.

98.     Upon information and belief, Defendants took the adverse actions described in paragraphs 1 through 82 of this Complaint because of Plaintiff's age.

99.     Defendants, by the discriminatory acts alleged in paragraphs 1 through 82, have violated the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

100.    Plaintiff, as a consequence of Defendants' discriminatory acts alleged in paragraphs 1 through 82, is a person aggrieved as defined by N.Y.C. Admin. Code § 8-102.

101.    Defendant Sorrentino was a supervisory employee of Corcoran who participated in the discriminatory actions referenced in paragraphs 1 through 82 and, therefore, is individually liable for the unlawful discrimination complained of herein.

102.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

103.    No previous application has been made for the relief requested herein.

**AS AND FOR A FOURTH CAUSE OF ACTION (As Against the Corporate Defendants)**
**Unlawful Retaliation in Violation of the ADEA**

104.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint as if recited in full herein as against Corporate Defendants.

105.    Plaintiff engaged in activity protected under the ADEA, 29 U.S.C. § 623(d), in that, as described in paragraphs 1 through 82 of this Complaint, Plaintiff opposed and complained to Corporate Defendants about the discriminatory practices described in this Complaint.

106.    Corporate Defendants were aware of the protected activity described in paragraphs 1 through 82 of this Complaint.

107.    Upon information and belief, Corporate Defendants took the adverse actions referenced in paragraphs 1 through 82 of this Complaint, because Plaintiff opposed and complained to Corporate Defendants about the discriminatory conduct described in paragraphs 1 through 82 of the Complaint.

108.    Corporate Defendants, through the actions referenced in paragraphs 1 through 82 of the Complaint, have unlawfully retaliated against plaintiff, in violation of the ADEA, 29 U.S.C. § 623(d).

109.    Upon information and belief, Corporate Defendants' actions in violation of the ADEA described in paragraphs 1 through 82 of the Complaint were willful within the meaning of 29 U.S.C. § 626(b).

110.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Corporate Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

111.    No previous application has been made for the relief requested herein.

**AS AND FOR A FIFTH CAUSE OF ACTION (As Against all Defendants)**
**Unlawful Retaliation in Violation of the NYSHRL**

112.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint as if recited in full herein.

113.    Upon information and belief, the decision to terminate Plaintiff's employment was made, reviewed and/or approved, and executed in the State of New York.

114.    As described in paragraphs 1 through 82 of this Complaint, Plaintiff opposed and complained to Defendants about the age discrimination described in those paragraphs.  Plaintiff thus engaged in activity protected under the NYSHRL of which Defendants were aware.

115.    Upon information and belief, Defendants took the adverse actions against Plaintiff described in paragraphs 1 through 82 of this Complaint, because Plaintiff opposed discriminatory practices described in those paragraphs.

116.    Defendants, through the actions referenced in paragraphs 1 through 82 of the Complaint, have unlawfully retaliated against Plaintiff, in violation of the NYSHRL, N.Y. Exec. L. § 296(1)(e).

117.    Defendant Sorrentino was a supervisory employee of Corcoran who participated in the retaliatory actions referenced in paragraphs 1 through 82 and, therefore, is individually liable for the unlawful retaliation complained of herein.

118.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

119.    No previous application has been made for the relief requested herein.

## AS AND FOR A SIXTH CAUSE OF ACTION (As Against all Defendants)

### Unlawful Retaliation in Violation of the NYCHRL.

120.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint as if recited in full herein.

121.     Upon information and belief, the decision to terminate Plaintiff's employment was made, reviewed and/or approved, and executed in New York, New York.

122.     As described in paragraphs 1 through 82 of this Complaint, Plaintiff opposed and complained to Defendants about the discriminatory practices described in those paragraphs. Plaintiff thus engaged in activity protected under the NYCHRL of which Defendants were aware.

123.     Upon information and belief, Defendants took the adverse actions against Plaintiff described in paragraphs 1 through 82 of the Complaint, because Plaintiff opposed and complained to Defendants about the discriminatory practices described in those paragraphs.

124.     Defendants, through the actions referenced in paragraphs 1 through 82 of this Complaint, have unlawfully retaliated against Plaintiff, in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(7).   Upon information and belief, Defendants' willful acts of retaliation were committed by and/or known to Defendants' managers, and Defendants took no action to cease the unlawful discrimination. Plaintiff, as a consequence of Defendants' retaliatory acts alleged in paragraphs 1 through 82, is a person aggrieved as defined by N.Y.C. Admin. Code § 8-102.

125.     Defendant Sorrentino was a supervisory employee of Corcoran who personally participated in the retaliatory actions referenced in paragraphs 1 through 82 and, therefore, is individually liable for the unlawful retaliation complained of herein.

126.    Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

127.    No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

(a)    declaring that the acts and practices complained of herein are in violation of the ADEA, the NYSHRL, and the NYCHRL;

(b)    enjoining and permanently restraining the violations alleged herein;

(c)    granting Plaintiff the full make-whole relief to which she is entitled, including, as appropriate:

(i)    directing Defendants to reinstate Plaintiff to the position she would have occupied, but for Defendants' discriminatory and retaliatory treatment, and to provide her with all earnings and benefits she would have received but for Defendants' unlawful discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, health insurance benefits, pension benefits, life and accident insurance benefits, stock options and all other benefits and compensation;

(ii)    directing Defendants to pay Plaintiff liquidated damages for its willful acts of discrimination and retaliation, pursuant to the ADEA, 29 U.S.C. § 626(b);

(iii)    directing Defendants to pay Plaintiff compensatory damages, including

but not limited to, damages to reputation and damages for humiliation and mental

anguish, and punitive damages, for its willful acts of discrimination and

retaliation, pursuant to ADEA, 29 U.S.C. § 626(b), incorporating 29 U.S.C. §

215(a)(3);

(iv)    directing Defendants to pay Plaintiff compensatory damages, including,

but not limited to, damages to reputation and damages for humiliation and mental

anguish, as provided for in N.Y. Exec. L. § 297(4)(c) and (9) and N.Y.C. Admin.

Code § 8-502, and punitive damages for their willful acts of discrimination and

retaliation, pursuant to N.Y. Exec. L. § 297(4)(c) and (9) and N.Y.C. Admin.

Code § 8-502;

(v)    granting Plaintiff the costs of this action together with reasonable

attorneys' fees, as provided for in 29 U.S.C. § 626(b), N.Y. Exec. L. § 297(10)

and N.Y.C. Admin. Code § 8-502;

(vi)    granting Plaintiff such interest as is allowed by law; and

(d)    awarding such other and further relief as this Court deems necessary and proper.

Dated: December 5, 2023
New York, New York

STULBERG & WALSH, LLP
Attorneys for Plaintiff

By: _____

Robert B. Stulberg (RS2734)
James deBoer (5882790)
14 Wall Street, Suite 5G
New York, New York 10005
(212) 268-1000

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her above-signed counsel, hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by Jury in the above-captioned action.